**STATE of Missouri, Respondent,**

v.

**Bob William CLIFFORD, Appellant.**

**No. WD 43382.**

Missouri Court of Appeals,
Western District.

July 2, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 27, 1991.

Application to Transfer Denied
Oct. 16, 1991.

Marcie W. Bower, Columbia, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and TURNAGE and ULRICH, JJ.

ULRICH, Judge.

Bob William Clifford appeals his conviction by a jury of possession of a controlled substance in violation of § 195.020.1, RSMo 1986. Mr. Clifford was sentenced to three years imprisonment. On appeal, Mr. Clifford contends that the State failed to produce sufficient evidence that he knowingly possessed a controlled substance, failed to lay a proper foundation for introducing the controlled substance into evidence, and the prosecutor, during closing argument, improperly injected his personal opinion, implied that he had special knowledge of Mr. Clifford's guilt, and repeatedly made improper references to Mr. Clifford's failure to testify. The conviction is affirmed.

On November 11, 1988, Mr. Clifford and Trevor Teale, Mr. Clifford's friend, left Kansas City, Missouri, and drove to Gentry County to hunt deer. The two men travelled in a car owned by Mr. Teale's father to the Elam Bend Wildlife Reservation in Gentry County. They intended to hunt on property owned by Mr. Teale's father that bordered the wildlife reservation. After spending a brief period of time at the hunting site, the two men drove to Mr. Teale's grandmother's house, located in McFall, Missouri.

According to Mr. Teale's testimony, beer, cocaine and marijuana were present in the automobile during the journey from Kansas City to McFall. Mr. Teale testified that Mr. Clifford knew he brought cocaine and marijuana on the hunting expedition. At trial, Mr. Teale testified as follows:

[Prosecutor] Was the defendant aware that you had the controlled substances with you?

[Mr. Teale] Yes, he was.

[Prosecutor] How is it you know he was aware of it?

[Mr. Teale] Probably I told him prior to the trip. We were together quite a bit. So either he knew the last couple days that we were together or I told him. I'm sure it was a matter of our friendship. I knew about him and he knew about me kind of thing.

Mr. Teale's grandmother was not home when the two men arrived at her house in McFall. The two men entered Mr. Teale's grandmother's one-car garage. There, Mr. Teale, using a mirror and a razor blade, chopped a portion of the cocaine that had been in the car into a powdery substance. Mr. Teale then separated the cocaine into individual portions and, using a rolled-up $20 bill, sniffed a portion of the cocaine. Mr. Teale testified that Mr. Clifford was present in the garage while he prepared the cocaine and that he and Mr. Clifford "took turns" ingesting the drug.

After spending approximately one to three hours in the garage, Mr. Teale and Mr. Clifford left Mr. Teale's grandmother's property and returned to the hunting area. Mr. Teale took the unused cocaine with him in his father's car, but he could not recall if Mr. Clifford observed him returning the cocaine to the automobile. Mr. Clifford drove a motorcycle from Mr. Teale's grandmother's house to the hunting area. Upon returning to the Elam Bend Wildlife Reservation, Mr. Clifford parked the motorcycle at the hunting area and reentered the automobile driven by Mr. Teale. The vehicle was then on the reservation. The two men remained in the automobile consuming beer and marijuana until morning. According to Mr. Teale's testimony, the two men did not inhale cocaine during the remainder of their hunting expedition.

At approximately 12:30 p.m., the afternoon of November 12, 1988, two agents of the Missouri Department of Conservation, Kyle Carroll and John Adams, observed Mr. Teale and Mr. Clifford sitting in the automobile in the Elam Bend Wildlife Reservation. The agents inquired whether the two men were in need of assistance. The agents continued to patrol the wildlife area. Two hours later, the agents observed Mr. Teale and Mr. Clifford still in the automobile. The agents approached the automobile and asked to inspect Mr. Teale's hunting permit. Mr. Teale stepped out of his automobile in order to present his hunting permit. While the door of the automobile was open, Agent Carroll saw the handles of a pair of hemostats and a razor blade on the center console between the two front seats of the automobile. Agent Carroll reached into the automobile and picked up the hemostats which appeared to have on them a residue from smoking material. Mr. Teale denied any knowledge regarding the residue on the hemostats. Agent Carroll looked inside the automobile again and found a rolled-up $20 bill on the console.

Agent Carroll then directed Mr. Teale and Mr. Clifford to stand outside of the automobile while it was searched. Without Mr. Teale's permission, the agents searched the automobile. During the search, the agents found a mirror, with a small amount of white powder on it, inside the glove compartment and a razor blade lying on or near the mirror. Agent Carroll also found a small bag containing white powder inside the console area between the driver's and passenger's seats. Agent Carroll asked the two men who owned the items, and Mr. Teale admitted they were his.

Trevor Teale and Bob William Clifford were subsequently charged with possession of a controlled substance in violation of § 195.020. Prior to trial, Mr. Teale pleaded guilty. Mr. Teale testified as the State's witness at Mr. Clifford's trial. At trial, the State's evidence established that the white powder seized by the agents was cocaine.

For point (1) on appeal, Mr. Clifford contends that the State failed to produce sufficient evidence to establish that he knowingly possessed the cocaine. In particular, Mr. Clifford claims the State failed to present evidence that he was aware of the cocaine's presence in the car, that he intentionally or consciously possessed the cocaine, or that he had exclusive use of the car at the time that the cocaine was seized. When reviewing the sufficiency of the evidence, the facts in evidence, together with all inferences reasonably drawn therefrom, must be considered in the light most favorable to the verdict, and all evidence and inferences to the contrary must be disregarded. *State v. Falkner*, 672 S.W.2d 373, 374 (Mo.App.1984).

To sustain a conviction for possession of a controlled substance, the State must demonstrate that the defendant knowingly and intentionally possessed the illegal substance. *State v. Keeper*, 787 S.W.2d 887, 889 (Mo.App.1990). When evidence of actual possession is lacking, "[c]onstructive possession will suffice to sustain a conviction for possession of a controlled substance if facts are present to buttress an inference of defendant's knowledge of the presence of a controlled substance." *State v. Falkner*, 672 S.W.2d at 375. In *Falkner*, the court further stated:

In narcotics or controlled substance cases, the law has developed the policy

that a person in *exclusive control* of the premises will be deemed to have possession and control of the substance found on the premises.... Where a person is present on premises where drugs are found *but does not have exclusive use or possession of the premises, it may not be inferred that he had knowledge of the presence of the drugs or had control, so that no submissible case is made. Additional factors are required.* Where the defendant is present on the premises *and if there are additional independent factors showing his knowledge and control,* then that is sufficient to withstand a motion for a directed verdict.

*Id.* at 375 (quoting *State v. Wiley,* 522 S.W.2d 281, 292 (Mo. banc 1975)). Since cases addressing constructive possession of controlled substances turn on a determination of these "additional factors," each case necessarily turns on its own facts. *Keeper,* 787 S.W.2d at 890. It is clear from these cases, however, that the mere presence of the defendant on the premises where the drugs are found is insufficient to uphold the conviction for possession of a controlled substance. *Id.*

Mr. Clifford, relying upon *State v. Bowyer,* 693 S.W.2d 845 (Mo.App.1985), contends that his mere presence in the automobile is insufficient evidence to support the conviction. In *Bowyer,* the defendant was convicted of possession of marijuana. *Id.* at 846. Mr. Bowyer was driving his estranged wife's automobile while she was present in the car. *Id.* A State Highway Patrol Trooper stopped the automobile and observed a roach clip in plain view. *Id.* The trooper subsequently discovered marijuana in the console located between the two front seats. *Id.* At trial, the wife testified that the defendant never had possession of these items nor did he have knowledge that they were in the automobile. *Id.* at 846–47. The only evidence suggesting the defendant was aware of the presence of marijuana was the roach clip in plain view, but the court determined that "[t]o assume that the [defendant] knew the illicit purpose of the roach clip, however, does not prove that he also knew of the

marijuana concealed in the console." *Id.* at 849. The court concluded that "[t]he evidence shows no additional inculpatory circumstance—other than the presence of the accused in the place where the substance was found—essential to the proof of that conscious possession, and hence conviction." *Id.*

In this case, however, additional inculpatory circumstances demonstrate Mr. Clifford's possession and control of the cocaine. Unlike *Bowyer,* in this case the co-occupant of the automobile testified that the defendant was aware of the controlled substance's presence. Additionally, Mr. Clifford was present for one to three hours in a one-car garage while Mr. Teale admittedly ingested the controlled substance. According to Mr. Teale's testimony, Mr. Clifford ingested cocaine also. Finally, paraphernalia used to consume the cocaine, a razor blade and a rolled-up $20 bill, were in plain view on the console of the automobile as the two men sat in the car for hours at the hunting area. These additional inculpatory circumstances sufficiently demonstrate Mr. Clifford's knowledge and control of the seized cocaine. Point (1) is denied.

■ For point (2), Mr. Clifford contends the trial court erred by allowing into evidence State's exhibit 1, an evidence bag containing the cocaine Mr. Clifford was charged with possessing. Mr. Clifford contends the State failed to provide a proper foundation for introducing the exhibit into evidence, failed to establish with reasonable assurance that the exhibit was in substantially the same condition when analyzed by the forensic chemist as when seized from the automobile, and failed to establish a chain of custody.

According to Agent Carroll's testimony, upon discovering the hemostats, the mirror with white powder on it, the two razor blades, the rolled-up $20 bill, and the package of cocaine in the automobile, he placed these items into an evidence bag and sealed the bag with yellow tape. Agent Carroll placed his initials on the yellow tape. Agent Carroll then locked the evidence bag

in his headquarters until he later transported the evidence to the Missouri Highway Patrol office in St. Joseph, Missouri.

Trooper Krautmann received the evidence bag from Agent Carroll at the Missouri Highway Patrol office. At trial, Trooper Krautmann testified that he noted in his official log receiving the evidence bag from Agent Carroll and provided Agent Carroll with a receipt for the items. The number entry from Trooper Krautmann's official log matched the number on the evidence bag presented at trial. Trooper Krautmann testified that the evidence bag was sealed when received from Agent Carroll. Trooper Krautmann further testified that, after he performed an analysis of the evidence, he resealed the evidence bag with blue evidence tape and placed his initials on the tape. Finally, Trooper Krautmann identified State's exhibit 1 as the evidence bag bearing his initials on the blue tape and testified that the items in State's exhibit 1 matched the inventory in his official log.

The evidence bag, as introduced into evidence at trial, contained two bags of white powder substance. According to Agent Carroll's testimony, only one bag of white powder substance was removed from the automobile at the hunting area. Mr. Clifford contends that, because two bags of white powder substance were contained in State's exhibit 1, the State failed to demonstrate with reasonable assurance that the exhibit was in substantially the same condition when analyzed that it was in when seized and failed to establish a proper chain of custody. Mr. Clifford did not object to the introduction of exhibit 1 into evidence at trial and, therefore, requests plain error review.

Under the plain error standard of review, the error complained of must impact so substantially upon the rights of the defendant that manifest injustice or a miscarriage of justice will result if left uncorrected. *State v. Driscoll*, 711 S.W.2d 512, 515 (Mo. banc 1986), *cert. denied*, 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301. The defendant bears a heavy burden of making a clear showing that manifest injustice results from the plain error. *State v. Hanson*, 735 S.W.2d 100, 101 (Mo.App.1987).

■ Missouri law requires that the State provide "reasonable assurance" that the exhibits sought to be introduced were in fact received from the defendant and are in like condition at the time of introduction as when received. *State v. Jones*, 760 S.W.2d 536, 538 (Mo.App.1988). "The reasonable assurance standard does not require proof of hand to hand custody of the evidence nor does the standard require the exclusion of every possibility that the evidence has been disturbed." *Id.* The trial court is in the best position to assure that there has been no improper tampering with an exhibit. *State v. Dudley*, 724 S.W.2d 517, 522 (Mo.App.1986). Additionally, the chain of custody of physical evidence is irrelevant where the exhibit is positively identified. *Id.*

The testimony of Agent Carroll and Trooper Krautmann provides reasonable assurance that State's exhibit 1 was in like condition when introduced at trial as when recovered by Agent Carroll at the hunting area. Agent Carroll explained that the additional bag of white powder found within exhibit 1 could be the amount of cocaine he found on the mirror or could represent the portion of cocaine used for Trooper Krautmann's testing. Mr. Clifford did not pursue a further explanation of the additional bag of cocaine on cross-examination. Additionally, Agent Carroll and Trooper Krautmann identified exhibit 1 as the evidence bag containing the hemostats, rolled-up $20 bill, mirror, razor blades and cocaine found in the automobile at the hunting area. The trial court did not commit plain error in allowing into evidence State's exhibit 1. Point (2) is denied.

■ For point (3), Mr. Clifford contends the trial court abused its discretion in failing to declare a mistrial, *sua sponte*, in response to the prosecutor's closing argument. Mr. Clifford claims that during closing argument the prosecutor injected his personal opinion and implied that he had special knowledge of defendant's guilt which was outside of the evidence. Additionally, Mr. Clifford claims the prosecutor

improperly argued to the jury that the State's evidence was uncontroverted in reference to Mr. Clifford's failure to testify.

During closing argument, the prosecutor stated to the jury:

As I reflect back on the testimony of Trevor Teale I found him to be forthright, open, honest, he bared his soul to this jury and to any of the questions that were asked. Mr. Lynn says, well, maybe Mr. Clifford was off somewhere else while Mr. Teale was getting the drugs ready that I know they both ingested.

Mr. Clifford claims that the prosecutor's statement, "I know they both ingested," implies an awareness of facts not available to the jury. Mr. Clifford also directs this court's attention to two occasions during closing argument during which the prosecutor argued that the State's evidence was "uncontroverted." At another point during closing argument, the prosecutor stated, "The only evidence you folks have before you is the evidence that's been presented by the State here." Mr. Clifford claims that these references by the prosecutor constitute improper comment upon his failure to testify. Mr. Clifford did not object to the State's closing argument at trial and, therefore, requests plain error review.

■■■ The trial court possesses broad discretion in controlling closing argument. *State v. Matthews*, 790 S.W.2d 271, 272 (Mo.App.1990). Errors committed during closing argument do not justify relief under the plain error standard unless they are determined to have had a decisive effect on the jury. *State v. Masterson*, 733 S.W.2d 40, 44 (Mo.App.1987). A prosecutor is prohibited from expressing to the jury during closing argument his belief that the defendant is guilty in such a manner that the comments imply knowledge of facts not in evidence. *State v. Rapheld*, 587 S.W.2d 881, 894 (Mo.App.1979). However, Missouri law is equally well settled that a statement by the prosecuting attorney during closing argument indicating his opinion that the defendant is guilty, where it is apparent that such opinion is based on the evidence in the case, is permissible. *Id.* *See also Grubbs v. State*, 760 S.W.2d 115,

119 (Mo. banc 1988), *cert. denied*, 490 U.S. 1085, 109 S.Ct. 2111, 104 L.Ed.2d 672 (1989). The prosecutor's comment, that he knew both men ingested cocaine, represents an expression of his opinion as to Mr. Clifford's guilt based upon the evidence in the case. Mr. Teale testified that, to best of his knowledge, both men ingested cocaine and the prosecutor's argument is, therefore, fairly drawn from this evidence.

■■■ Missouri law also provides that the prosecutor may not comment on a defendant's failure to testify. *State v. Sidebottom*, 753 S.W.2d 915, 920 (Mo. banc 1988), *cert. denied*, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550. However, this rule does not prohibit a prosecutor from making reference to the defendant's failure to offer any evidence. *Id.* The rule only prohibits direct and certain references to the accused's failure to testify. *Id.* Missouri cases have repeatedly held that a characterization of evidence as "uncontroverted" is not a forbidden reference to the defendant's failure to testify. *See State v. Stewart*, 727 S.W.2d 186, 187 (Mo.App.1987). The prosecutor's remarks do not constitute improper comment upon Mr. Clifford's failure to testify. Point (3) is denied.

For point (4), Mr. Clifford contends the trial court committed plain error in submitting instruction No. 7 to the jury, the verdict directing instruction for possession of a controlled substance. Instruction No. 7 directs the jury to find Mr. Clifford guilty if it finds that "the defendant or Trevor Scott Teale possessed cocaine, and ... that defendant or Trevor Scott Teale knew that he possessed it, and ... the defendant was aware of the nature and character of the substance...." Mr. Clifford contends that the trial court committed plain error in submitting this instruction to the jury because the State failed to produce evidence demonstrating that he possessed cocaine or knew that Mr. Teale possessed cocaine. Point (4) is another attack by Mr. Clifford upon the sufficiency of the evidence to support the conviction. As addressed in point (1), sufficient evidence was presented to the trier of fact upon which a reasonable jury could conclude that Mr. Clifford pos-

sessed a controlled substance in violation of § 195.020. Point (4) is denied.

Mr. Clifford's conviction by a jury of possession of a controlled substance in violation of § 195.020 is affirmed.

All concur.